IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAUDE S. YACAPSIN,** | : | |
|     **Plaintiff** | : | No. 1:22-cv-00617 |
| | : | |
|     v. | : | (Judge Kane) |
| | : | |
| **MESSIAH UNIVERSITY,** | : | |
|     **Defendant** | : | |

### MEMORANDUM

Plaintiff Maude S. Yacapsin ("Plaintiff") commenced this action on April 28, 2022, claiming that Defendant Messiah University ("Defendant" or "University") discriminated against her on the basis of her religion, in violation of Title VII of the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq. (Doc. No. 1.)  Currently before the Court is Defendant's motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 10.)  For the reasons that follow, the Court will grant in part and deny in part Defendant's motion.

I.    **BACKGROUND**[1]

Defendant hired Plaintiff in August 2011 as an Assistant Professor of Special Education (Doc. No. 1 ¶ 20) and promoted her to Associate Professor of Special Education during the 2014-15 academic term (id. ¶ 21).  On May 24, 2019, Plaintiff "was recommended for Tenure and Promotion as a full Professor for a five-year period, ending July 31, 2026." (Id. ¶ 22.)  The University terminated Plaintiff's employment in May 2021.  (Id. ¶ 23.)

Plaintiff's terms of employment required her to annually affirm the "Apostles Creed,"

---

[1] The Court draws the following background from the allegations in Plaintiff's complaint, as well as from matters incorporated by reference or integral to the complaint, which the Court has accepted as true in evaluating Defendant's motion to dismiss.  See Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004).

which states:

> I believe in God the Father almighty, Creator of heaven and earth.  I believe in Jesus Christ, God's only Son, our Lord, who was conceived by the Holy Spirit, born of the Virgin Mary suffered under Pontius Pilate, was crucified, died and was buried.  He descended to the dead.  On the third day he rose again, ascended into heaven and is seated at the right hand of the Father.  He will come again to judge the living and the dead.
>
> I believe in the Holy Spirit, the holy catholic Church, the communion of saints, the forgiveness of sins, the resurrection of the body, and the life everlasting.  Amen.

(Id. ¶¶ 31-33.)  She "follow[ed] the Apostolic Creed as required by her contract" and as espoused by the "sacraments and teachings of the Holy Roman Catholic Church," in accordance with which she lives her life.  (Id. ¶¶ 53-54.)

Throughout her employment, Plaintiff allegedly "experienced condescending and sarcastic comments about her Catholicism and specifically about her belief in the virgin birth, which is also a part of the Apostolic Creed."  (Id. at 1.)  She attests to seeing "signs on campus that indicated a hostility toward references to the virgin birth of Jesus, which [she] felt were directed to her Catholic Christianity."  (Id. ¶ 55.)  She also avers that she was required to engage in self-promotion, even though it is proscribed by her faith as boastful and prideful.  (Id. ¶ 67.)

Plaintiff claims she made several complaints about the religious intolerance she felt at the University.  In 2017, she allegedly informed her supervisor about the incompatibility between her requirement to self-promote and her Catholic belief.  (Id. ¶¶ 8, 67-68.)  She also claims to have reported a sign posted on a classroom door, which stated "Virgin Birth…Awkward," to Assistant Dean Fisler and other peers during a March 2018 meeting.  (Id. ¶ 57.)  Plaintiff again complained about this sign at a separate March 2018 meeting organized by University Director

Tod Allen to discuss "negative campus climate reports." (Id. ¶¶ 58-61).[2] Plaintiff also allegedly complained about her discriminatory treatment to the University's provost in December 2019. (Id. ¶¶ 81-83.)

Plaintiff maintains that Defendant discriminated against her because of her religious beliefs. For example, after complaining about the requirement to self-promote in 2017, she allegedly received negative "feedback on her personnel file." (Id. ¶¶ 68-71.) Moreover, at a subsequent meeting to discuss this negative feedback, University Dean Robert Pepper opined that the evaluation should not have come as a surprise given her refusal to self-promote. (Id. ¶¶ 4, 72-73.) Following that meeting, Defendant allegedly "removed courses from P[laintiff] and reassigned P[laintiff]'s courses to other educators, including educators below P[laintiff]'s rank, such as adjunct professors." (Id. ¶¶ 77-80.)

Plaintiff also contends that when "the worldwide pandemic of COVID[-]19 arrived in Pennsylvania" in "early March 2020" and "sheltering orders went into effect, as did a higher demand for remote learning," Defendant "exploited [her] teaching expertise and ability to incorporate technology into course delivery by asking her to teach other faculty about remote teaching, and P[laintiff]'s course load temporarily doubled." (Id. ¶¶ 84-85.) Moreover, although Plaintiff's "contracts for student overloads increased significantly" "during the Spring semester of 2020," Defendant purportedly failed to pay Plaintiff "for her student overload of over 20 students[.]" (Id. ¶¶ 87-88.) Plaintiff was also given "notice of her contract ending in the Spring of 2020 for non-renewal after the 2020-2021 academic year" on May 14, 2020, see (Doc. Nos. 1 at 89, 11-3 at 2, 13 at 10), "[d]espite the need for educators who could teach undergraduate and

---

[2] Plaintiff claims Assistance Dean Fisler attended that meeting and was aware that Plaintiff perceived the sign as a "direct statement of hostility towards her Catholicism." (Id. ¶¶ 62, 65.)

3

graduate level courses remotely" (Doc. No. 1 ¶ 89).  Finally, "[i]n December 2020, the Tenure and Promotion Committee did not approve Prof. Yacapsin's Full Professor Essay, despite it being published in a prestigious, Christian Journal."  (Id. ¶ 91.)

On December 17, 2020, less than three-hundred (300) days after her May 14, 2020 notice of non-renewal, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[3]  (Id. ¶ 14.)  On April 5, 2021, she simultaneously filed an amended charge of discrimination with the EEOC and the Pennsylvania Human Relations Commission ("PHRC").  (Id. ¶ 15.)  On January 31, 2022, the EEOC issued a ninety (90) day notice of Plaintiff's right to sue.  (Id. ¶¶ 17-18.)

In May 2021, Plaintiff was terminated from employment for the sole proffered reason of "low enrollment."  (Id. ¶¶ 23-24.)  Plaintiff alleges that, despite claims of low enrollment, her "courses were ones where enrollment was maintained, and not declining," explaining "the University gave extended course contracts to [Plaintiff] for 17 courses which were filled over capacity."  (Id. ¶¶ 25-26.)  This lawsuit followed.

On July 5, 2022, Defendant filed the pending motion to dismiss Plaintiff's complaint (Doc. No. 10) along with a brief in support (Doc. No. 11).  Plaintiff filed a brief in opposition on July 13, 2022 (Doc. No. 13), and on August 30, 2022, Defendant filed a reply brief (Doc. No. 18).  Plaintiff requested leave to file a sur-reply brief on September 20, 2022.  (Doc. No. 21.)  Plaintiff's unopposed request (Doc. Nos. 21, 21-2) was granted on November 23, 2022 (Doc. No.

---

[3] Specifically, Plaintiff filed an EEOC Intake Questionnaire, which Defendant concedes is a charge of discrimination for the purposes of the pending motion.  (Doc. No. 11 at 21 n.12); see Hildebrand v. Allegheny Cnty., 757 F.3d 99, 102 (3d Cir. 2014) (holding that an EEOC intake questionnaire, "when properly completed, constitutes a charge of discrimination").

4

23), and her sur-reply brief was filed as a separate docket entry (Doc. No. 25). Because the motion to dismiss has been fully briefed, it is ripe for disposition.

## II. LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court need not accept legal conclusions proffered as factual allegations. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Consistent with the Supreme Court's rulings in Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 664). A complaint is properly dismissed where the factual content in the complaint does not allow a court "to draw the reasonable inference that the defendant is liable for the misconduct

5

alleged." See Iqbal, 556 U.S. at 678.

In ruling on a 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

### III.  DISCUSSION

Plaintiff's complaint alleges four counts, two under Title VII and two under the PHRA, as follows: "Religious Harassment/Hostile Work Environment and Religious Discrimination Under Title VII" (Count I); "Retaliation Under Title VII" (Count II); Religious Discrimination under the PHRA (Count III); and Retaliation under the PHRA (Count IV).  (Doc. No. 1 at 16-19.)  The Court can quickly dispense with Plaintiff's PHRA claims (Counts III & IV), which she concedes are time-barred.  (Doc. No. 13 at 12 n.2.)  Accordingly, the Court will grant Defendant's motion to dismiss Counts III and IV.

Plaintiff's remaining claims proceed under Title VII.  Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's" religion.  See 42 U.S.C. § 2000e-2(a).  Defendant argues that Plaintiff's Title VII claims should be dismissed because (1) they are untimely, to the extent they arise from discrete acts of discrimination that occurred before February 21, 2020, and (2) "Messiah Is A Religious Organization Exempt From Religious Discrimination, Harassment, and Retaliation Claims Under Title VII."  (Doc. Nos. 11 at 15, 20, 18 at 6, 12.)

A.      The Timeliness of Plaintiff's Claims Under Title VII

"To bring suit under Title VII, a claimant in a deferral state, such as Pennsylvania, must first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice." Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013) (citing 42 U.S.C. § 2000e-5(e)(1)).  "[D]iscrete discriminatory actions are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  Each discrete act of discrimination "constitutes a separate actionable 'unlawful employment practice,'" see id. at 114, and "start[s] a new clock for filing charges alleging that act,'" see Mateo v. First Transit Inc., No. 19-cv-17302, 2021 WL 3856288, at *6 (D.N.J. Aug. 30, 2021) (quoting Morgan, 536 U.S. at 122).  Thus, "generally, a court may not consider conduct falling outside the designated statute of limitations period." See Leonard v. Bristol Twp. Sch. Dist., No. 09-cv-04692, 2010 WL 2995540, at *4 (E.D. Pa. July 28, 2010). Examples of discrete acts include "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, [and] wrongful accusation." See O'Connor, 440 F.3d at 127.

Under the "continuing violations doctrine," however, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." See Tearpock-Martini v. Borough of Shickshinny, 756 F.3d 232, 236 (3d Cir. 2014) (quoting Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991)).  "[D]iscriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim" if they are "linked in a pattern of actions which continues into the applicable limitations

7

period." See Mandel, 706 F.3d at 165 (emphasis added) (quoting O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006)).

The determination of whether the continuing violations doctrine applies turns on two factors: subject matter and frequency. See id. at 165-67. The subject matter prong considers "whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation," and the frequency prong asks "whether the acts are recurring or more in the nature of isolated incidents." See Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001).[4] As to the frequency prong, there is no "specific standard for determining how close together the acts must occur to amount to a continuing violation." See Sosa v. Cnty. of Hudson, N.J., No. 2:20-cv-00777, 2020 WL 5798761, at *3 (D.N.J. Sept. 28, 2020) (quoting Cowell, 263 F.3d at 292, 295). Instead, "the acts must be of 'substantially similar nature to those which were the basis of the original claim.'" See id.

Here, while conceding that Plaintiff has alleged a timely hostile work environment claim to which the continuing violations doctrine applies, Defendant argues that Plaintiff's discrimination and retaliation claims—"separate and apart from her hostile work environment claims"—are time-barred to the extent they are based on "any discrete discriminatory acts that occurred prior to February 21, 2020[.]" (Doc. No. 18 at 12-13.) However, Plaintiff does not base her discrimination and retaliation claims on discrete acts that occurred before February 21,

---

[4] "Cowell included a third factor—whether the violations had a degree of permanence that would have triggered the plaintiff's awareness of the duty to assert his or her rights," but the Third Circuit, in an unpublished opinion, "limited Cowell's test for determining whether a continuing violation exists by eliminating the degree of permanence factor" in light of Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). See Cibula v. Fox, 570 F. App'x 129, 136 n.7 (3d Cir. 2014) (unpublished) (first citing Mandel, 706 F.3d at 165-67, and then citing Cowell, 263 F.3d at 292).

2020. (Doc. Nos. 1 ¶ 100, 13 at 11.) Instead, she asserts that these claims are based solely on her involuntary separation in May 2020, which falls within the applicable limitations period. (Doc. No. 13 at 10-11.) Accordingly, Defendant's motion to dismiss any claims of discrete acts that occurred prior to February 21, 2020, is misplaced.

Having determined that Plaintiff's Title VII claims are not time-barred, the Court turns to Defendant's argument that it is a religious institution and therefore exempt from Title VII.

### B. Whether Title VII's Exemption for Religious Entities Bars Plaintiff's Claims under Counts I & II

Title VII does not apply "to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities." See 42 U.S.C. § 2000e-1(a); see also LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 226 (3d Cir. 2007). Here, the parties dispute whether: Defendant is a qualifying religious institution under Title VII; what information the Court can properly consider in making that determination; and, even if Defendant is a qualifying religious institution, whether Title VII's exemption actually bars Plaintiff's claims. (Doc. Nos. 11 at 15-20; 13 at 13-25; 18 at 6-12; 25 at 6-15.)

District courts in the Third Circuit look to the LeBoon factors to determine whether an entity is a qualifying religious institution under Title VII:

> (1) whether the entity operates for a profit, (2) whether it produces a secular product, (3) whether the entity's articles of incorporation or other pertinent documents state a religious purpose, (4) whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue, (5) whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees, (6) whether the entity holds itself out to the public as secular or sectarian, (7) whether the entity regularly includes prayer or other forms of worship in its activities, (8) whether it includes religious instruction in its curriculum, to the extent it is an educational institution, and (9) whether its membership is made up by coreligionists.

9

See LeBoon, 503 F.3d at 226.

Because the analysis required by LeBoon is fact-intensive, the Court concludes that Defendant's motion to dismiss on religious exemption grounds is premature. Specifically, the Court observes that the determination made in LeBoon as to whether an entity was exempt under Title VII occurred after discovery had closed, on a motion for summary judgment. See id. at 221. Not only is there no equivalent record before this Court, but motions to dismiss are generally denied when they are predicated on a defense that requires a factual review to establish. See Charles v. Laws. Title Ins. Corp., No. 06-cv-02361, 2007 WL 1959253, at *7 n.1 (D.N.J. July 3, 2007) (explaining that a defendant's "argument can . . . be dismissed, independently," because it is predicated on "an affirmative defense that requires a factual review"); 2 James Wm. Moore et al., Moore's Federal Practice § 12.34(4)(b) (3d ed. 2013) (explaining defenses that "require a factual review to be established . . . should not support a dismissal for failure to state a claim"). Accordingly, Defendant's motion to dismiss Counts I and II will be denied.

## IV.    CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion to dismiss as to Counts I and II and grant it as to Counts III and IV. An appropriate Order follows.